IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 16-CR-42-JHP |
| STEVEN WILLIAM DELIA, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Steven William Delia's Motion to Dismiss on the Basis of Statute of Limitations (Doc. No. 9). Plaintiff United States of America opposes the Motion (Doc. No. 23). For the reasons set forth below, Defendant's Motion is **DENIED**.

## BACKGROUND

On June 15, 2016, Defendant Delia was indicted by a federal grand jury on one count of Health Care Fraud, in violation of 18 U.S.C. § 1347. Defendant was an Oklahoma physician practicing in Sallisaw, Oklahoma, at a medical clinic. Defendant is accused of defrauding money and property owned by and under the custody and control of the Oklahoma Health Care Authority, a health benefit program as defined in 18 U.S.C. § 24(b). Specifically, Defendant is accused of filing false claims and receiving Medicaid payments for medical services that he did not render. The fraud allegedly occurred between February 1, 2010, and November 9, 2010.

## DISCUSSION

The statute of limitations for filing an indictment on a violation of 18 U.S.C. § 1347 is five years. 18 U.S.C. § 3282. Defendant argues that the limitations period for the accused fraud expired after November 9, 2015. Because the indictment was not filed until June 15, 2016,

Defendant asserts it is barred by the statute of limitations. In response, Plaintiff argues the indictment was timely filed for two reasons: (1) the applicable statute of limitations was tolled and has not expired by virtue of the Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287, and (2) on January 5, 2016, Defendant waived the statute of limitations until July 31, 2016.

## I. Tolling Under the WSLA

The Court will first address whether the WSLA applies to the present situation. The WSLA provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), *the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not*, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, *shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation,* with notice to Congress, or by a concurrent resolution of Congress.

18 U.S.C. § 3287 (emphasis added). Defendant argues the WSLA does not apply to the facts of this case for two reasons. The Court addresses each argument below.

### A. Application to Fraud Unrelated to War

First, Defendant argues the tolling statute should be conservatively interpreted, in light of its purpose to apply to certain *war-related frauds*, to exclude Medicaid fraud charges against country doctors in Sallisaw, Oklahoma. Defendant relies on the Supreme Court's decision in *Bridges v. United States*, 346 U.S. 209 (1953), in which the Court held the WSLA did not apply to the offenses of knowingly making a false statement under oath in a naturalization proceeding,

2

conspiring to have someone do so, or aiding someone to obtain by false statements a Certificate of Naturalization. *Id.* at 221. The Court noted the legislative history of the WSLA "emphasizes the propriety of its conservative interpretation," which is that it applies only "to war frauds of a pecuniary nature or of a nature concerning property." *Id.* at 216. Defendant also relies on *McGuiness v. United States*, 77 A.2d 22 (D.C. 1950), in which the District of Columbia Municipal Court of Appeals found the WSLA did not apply to passing bad checks payable to the United States Treasury, because "defrauding the United States for a non-war-connected purpose or defrauding the Government at all" was not an essential element of the local bad check law. Defendant further cites *United States v. Beard*, 118 F. Supp. 297, 303 (D. Md. 1954), in which the District of Maryland held the WSLA did not apply to federal income tax evasion charges.

In response, the United States asserts the WSLA applies to more than just defense fraud. The United States cites the language of the statute in support, which lists three types of offenses: (1) fraud against the United States, (2) offenses committed in connection to acquisition of real or personal property of the United States, and (3) offenses committed in connection with or related to the prosecution of the war. Though the United States does not elaborate on its argument, the Court agrees that the language of the statute clearly separates war-related offenses in the third category from the two preceding offenses. Of the three types of offenses the WSLA covers, only the third category, offenses "committed in connection with . . . any contract, subcontract, or purchase order" includes the phrase "which is connected with or related to the prosecution of the war." Applying this phrase to the two preceding categories, as another district court has explained, "would violate 'the grammatical rule of the last antecedent,' pursuant to which 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that

3

it immediately follows.'" *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 613 (S.D.N.Y. 2013) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

Further, applying the WSLA to all frauds against the United States, including those unrelated to war, accords with the purpose of the WSLA "to give the government sufficient time to investigate and prosecute pecuniary frauds committed while the nation [is] distracted by the demands of war." *United States v. Prosperi*, 573 F. Supp. 2d 436, 449 (D. Mass. 2008)). *See United States v. Smith*, 342 U.S. 225, 228 (1952) (explaining one purpose of the WSLA "is that offenses occurring prior to the termination of hostilities shall not be allowed legally to be forgotten in the rush of the war activities."). Though rare, courts have applied the WSLA to criminal cases in which the charged fraud was entirely unrelated to the war effort or the military. *See United States v. Grainger*, 346 U.S. 235, 240-44 (1953) (applying WSLA to charge of financial fraud against Commodity Credit Corporation related to wool purchases); *Wells Fargo Bank, N.A.*, 972 F. Supp. 2d at 611-13 (applying WSLA to charge of submitting to HUD false claims for payment); *United States v. Pearson*, 2010 WL 3120038, at *1 (S.D. Miss. Aug. 4, 2010) (applying WSLA to charge of Medicare fraud); *Prosperi*, 573 F. Supp. 2d at 441-42 (applying WSLA to charges of contracting fraud connected to highway construction project unrelated to wartime conflicts).

As Plaintiff points out, *Bridges* stands for the rule that the WSLA applies only to offenses in which defrauding the United States in a pecuniary manner or in a manner concerning property is an essential element of the offense, not for the proposition that the WSLA is limited only to war-related offenses. *Id.* at 221-22. *See United States v. Grainger*, 346 U.S. 235, 241 (1953) (noting *Bridges* ruled that the alleged fraud must be of a pecuniary or property nature in order for the WSLA to apply). Moreover, Defendant's other cited cases, *McGuinness* and *Beard*, do not

4

demonstrate to the Court that the WSLA is limited to war-related offenses.  Neither *McGuinness* nor *Beard* expressly held the WSLA was limited to war-related offenses.  Rather, they relied on Supreme Court decisions which held that exceptions to the general statute of limitations should be narrowly construed.  *McGuinness*, 77 A.2d at 24; *Beard*, 118 F. Supp. At 303-04.  Further, *McGuinness* holds little weight, because the Government in that case conceded the charged offense of delivering bad checks payable to the Treasurer of the United States, in violation of the local bad check law, did not include defrauding the Government as an essential ingredient of the offense.  77 A.2d at 24.  Moreover, in *Beard*, the court did not comment on the applicability of the WSLA to federal income tax evasion, except to conclude that the WSLA did not apply "to this prosecution for income tax evasion" under Supreme Court precedent.  118 F. Supp. at 303-04.  Accordingly, the Court concludes the WSLA is not limited to war-related frauds against the United States.

    B.    **Application to Medicaid Fraud**

Second, Defendant argues the WSLA does not apply to the charged offense in this case, because none of the three categories of the WSLA applies to Oklahoma's managed care Medicaid program, which is a State, not Federal agency that is jointly funded by the State of Oklahoma and the Federal Government but managed by the State.  Accordingly, Defendant argues, the WSLA does not apply to Medicaid fraud.  In response, Plaintiff argues fraud against the Medicaid program involves fraud against the United States, because Medicaid is a joint cooperative federal-state program.  *See Okla. Chptr. Of the Am. Acad. Of Pediatrics v. Fogarty*, 366 F. Supp. 2d 1050, 1101 (N.D. Okla. 2005) (explaining the costs of the Medicaid program are shared between the federal government and participating states) (citing *Atkins v. Rivera*, 477 U.S. 154, 156-57 (1986)).

As Defendant correctly points out, there is no case precedent in which the WSLA was applied to criminal Medicaid fraud charges. However, the Court located one case in which the WSLA was applied to toll the statute of limitations for civil False Claims Act allegations involving Texas Medicaid fraud. *United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825 (S.D. Tex. 2014). Accordingly, there is some precedent for applying the WSLA to accusations of Medicaid fraud. Moreover, Plaintiff cites no authority to the contrary, and the Court could locate none. Because Medicaid fraud involves pecuniary fraud against the United States, the Court concludes tolling under the WSLA applies to the charge against Defendant.

## II. Waiver of Statute of Limitations

Plaintiff separately argues that, even if the WSLA does not toll the statute of limitations, the indictment against Defendant was nonetheless timely filed, because Defendant signed a waiver of the statute of limitations on January 5, 2016. Defendant argues the waiver is invalid, because Defendant signed it after the five-year statute of limitations had already expired.

The Court finds the issue of the waiver's validity to be moot, because the WSLA tolls the applicable statute of limitations. Accordingly, the waiver is meaningless as it applies to the indictment against Defendant.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss on the Basis of Statute of Limitations (Doc. No. 9) is **DENIED**.

**IT IS SO ORDERED** this 17th day of August, 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma