# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 16-CR-42-JHP |
| STEVEN WILLIAM DELIA, ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Defendant Steven William Delia's Motion in Limine as to the Government's Intent to Offer Character, Reputation, and Other Crimes Evidence (Doc. No. 26) Defendant seeks a pre-trial ruling on the admissibility of the United States' proposed evidence as to Defendant's character, reputation, and other crimes.

## Background

On June 15, 2016, Defendant Delia was indicted by a federal grand jury on one count of Health Care Fraud, in violation of 18 U.S.C. § 1347. Defendant was an Oklahoma physician practicing in Sallisaw, Oklahoma, at a medical clinic. Defendant is accused of defrauding money and property owned by and under the custody and control of the Oklahoma Health Care Authority, a health benefit program as defined in 18 U.S.C. § 24(b). Specifically, Defendant is accused of filing false claims and receiving Medicaid payments for medical services that he did not render. The fraud allegedly occurred between February 1, 2010, and November 9, 2010.

In 2010, Defendant was also a U.S. Army Reservist. Defendant was activated for military service in 2010 and was deployed to Afghanistan in October 2010, several months after receiving notice of his deployment.

**Discussion**

I.　**Anticipated Testimony**

On July 25, 2016, the United States filed a Notice of Intent to Admit Evidence of Other Crimes, Wrongs or Acts ("Notice") (Doc. No. 25). In the Notice, the United States proposes to introduce testimony by members of staff at Defendant's medical practice in Sallisaw. Specifically, the United States anticipates: **(1) L.P.N. LeeAnn Dewberry** will testify that in the months leading up to Defendant's deployment, Defendant signed a number of blank prescription pads so that his staff could operate the clinic during his absence and prescribe Schedule II narcotics while he was deployed, that Defendant repeatedly informed his staff he wanted to continue making money while he was away, and that Defendant handed out large amounts of narcotic prescriptions to patients without scrutinizing their ailments or refusing known drug seekers; **(2) L.P.N. Jennifer Campney** will testify that many patients at the clinic were drug seekers, that Defendant did not request patient medical records, that Defendant was known in Sallisaw as the "Candy Man" for prescribing excessive narcotics, and that Defendant directed nurses to fill out pre-signed prescription pads for narcotics while he was absent from the clinic; **(3) P.A. Susan Davis** will testify that Defendant's clinic continued to see patients, prescribe Schedule II prescriptions using the pre-signed prescriptions, and bill Medicaid for his service while Defendant was deployed to Afghanistan, that the Oklahoma Board of Medical Licensure ("Board") investigated Defendant's clinic in November 2010, seized pre-signed prescription pads containing 5,625 blank prescriptions with Defendant's signature, and shut down the clinic until a physician was back at the clinic, that she regularly used pre-signed prescriptions for refills of narcotic medications, that Defendant's staff routinely used pre-signed prescription pads when Defendant was not at the clinic, and that she asked Defendant for her own Medicaid number to bill her own services, but Defendant refused and billed her services under his Medicaid number;

and **(4) an investigator from the Board** will testify that Defendant admitted he pre-signed prescription pads to increase efficiency, that Defendant confessed P.A. Davis used the pre-signed prescriptions to provide Schedule II medications for established patients and that his staff used pre-signed prescriptions for patients when he was out of the office, that Defendant admitted he was away from the clinic for long periods of time in 2010 and pre-signed sufficient prescription pads so that his office could continue seeing patients during his absence, that Defendant surrendered his medical license in 2012 in lieu of the Board moving forward with prosecution, and that Defendant was paid by Medicaid for services under his Medicaid number even when no physician was seeing the patients.

The United States argues this anticipated testimony is admissible as *res gestae* of the crime of Medicaid fraud. In the alternative, the United States argue this evidence is admissible under under Fed. R. Evid. 404(b) as absence of mistake, intent, lack of accident, knowledge, motive, and opportunity.

### A. *Res Gestae* of the Crime

An uncharged act may be admissible as *res gestae*, or intrinsic evidence, "if 'it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'" *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (quoting *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994). Evidence of other crimes may be admitted "when those facts come in as *res gestae*—as part and parcel of the proof of the offense charged in the indictment." *Id.* (quotation omitted). Despite its relevance, such evidence may nonetheless be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. *See Ford*, 613 F.3d at 1268.

The United States argues the above testimony by Defendant's clinic medical staff and the Board investigator is inextricably intertwined with the charge crime of health care fraud. Such evidence, according to the United States, will provide the jury with a frame of reference as to why Defendant began signing prescription pads to be used while he was out of the office—because Defendant needed to keep his pill-seekers returning even when he was out of the office. The United States further argues the testimony about billing P.A. Davis' services under Defendant's Medicaid number is important because it provides context of how involved Defendant was in the day-to-day operations of the clinic.

The Court agrees with the United States that the anticipated testimony of L.P.N. Dewberry, L.P.N. Campney, P.A. Davis, and the Oklahoma Medical Licensure Investigator, with exceptions noted below, is admissible as *res gestae* of the charged crime of health care fraud. The majority of the anticipated testimony is highly relevant to the United States' case-in-chief, because it provides necessary evidence that Defendant's practices in running his clinic, in violation of Board rules and regulations, directly resulted in violations of Medicaid requirements. Defendant has not shown how this evidence presented a danger of unfair prejudice, meaning that it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or [innocence] of the crime charged." *Ford*, 613 F.3d. at 1268 (quoting *United States v. Tan*, 254 F.3d 1204, 1211-12 (10th Cir. 2001)) (quotation marks omitted).

However, the Court concludes that the anticipated testimony that Defendant was known as the "Candy Man" due to his reputation for prescribing narcotics is not proper *res gestae* evidence and in any event presents a danger of unfair prejudice that substantially outweighs its probative value. Accordingly, the United States is prohibited from introducing testimony, other

evidence, or argument suggesting that Defendant was known as the "Candy Man." Further, the Court concludes that most of the anticipated testimony of the Board Investigator must be excluded because it too presents a danger of unfair prejudice that substantially outweighs its probative value. Accordingly, the United States may not introduce testimony, other evidence, or argument establishing that (1) Defendant was interviewed by the Board in 2011, (2) Defendant confessed to pre-signing prescriptions pads during the Board interview, (3) the Board filed a Complaint against Defendant in 2011, or (4) Defendant voluntarily surrendered his medical license in 2012.

### B. Rule 404(b)

The Court further concludes that the proposed testimony described above which is not admissible as *res gestae* evidence is also not admissible under Fed. R. Evid. 404(b). Under Fed. R. Evid. 404(b)(1), evidence cannot be used if its only purpose is "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence may be admitted as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009) (quotation omitted). The Tenth Circuit has explained that such evidence is admissible under Rule 404(b)(2) if (1) it is offered for a proper purpose, (2) it is relevant, (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice, and (4) the jury receives a proper limiting instruction upon request. *United States v. Hill*, 60 F.3d 672, 676 (10th Cir. 1995) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Rackstraw*, 7 F.3d 1476, 1478 (10th Cir. 1993)).

The United States argues certain evidence that the Court has excluded as *res gestae* evidence is admissible under Rule 404(b), specifically, testimony and/or exhibits concerning (1) Defendant's nickname "Candy Man," (2) Defendant's interview with the Board in 2011, (3) the Board's Complaint against Defendant in 2011, and (4) Defendant's voluntary surrender of his medical license in 2012. The Court disagrees. Even if such evidence is offered for a proper purpose, such as motive to commit health care fraud, and is relevant to the charge against him, the potential for unfair prejudice substantially outweighs its probative value. As Defendant points out, if the jury is made aware of the facts that Defendant confessed to the Board and surrendered his medical license, the jury would likely presume Defendant committed the charged crime based on those facts. Accordingly, it is unlikely Defendant could receive a fair trial if such information is introduced. Therefore, the proposed evidence fails under the third prong of the Tenth Circuit's test and must be excluded.

## Conclusion

For the reasons set forth above, Defendant Steven William Delia's Motion in Limine as to the Government's Intent to Offer Character, Reputation, and Other Crimes Evidence (Doc. No. 26) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED this 29th day of August, 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma